THEOPHILUS L. TOULMIN v. SAMUEL C. HEIDELBERG.

1. CHANCERY: BILL TO REMOVE CLOUDS ON TITLE.—A party cannot maintain a bill to remove clouds from his title, unless he have either a perfect legal or equitable title to the land.

2. HUSBAND AND WIFE: POWER OF HUSBAND'S AGENT TO JOIN IN A DEED WITH THE WIFE.—A power of attorney by the husband, authorizing an agent to sell and convey his land, does not empower him to join with the wife in a conveyance of *her* realty; and a deed made jointly by such an agent and the wife, is a nullity so far as it relates to land belonging to her.

3. SAME: CERTIFICATE ACKNOWLEDGMENT OF WIFE TO A DEED.—The certificate of the acknowledgment of a *feme covert* to a deed, must not only show that she signed, but also that she *sealed* and *delivered* the deed, without the fear, threat or compulsion of her husband.

APPEAL from the District Chancery Court at Paulding. Hon. B. C. Buckley, vice-chancellor.

The certificate of the acknowledgment of Mrs. Johnston to the deed releasing the land to Heidelberg, is as follows:

"The State of Mississippi, }
    Jasper county.            }

"Personally appeared before the undersigned, James A. Chapman, clerk of the Probate Court, the above-named Jane Lee Johnston and William Cherry, who acknowledged that they signed, sealed and delivered the foregoing deed, as their voluntary act and deed, and for the purposes therein mentioned; and the said Jane Lee Johnston, on a separate examination, apart from her husband, acknowledged that she signed the same also as a relinquishment of any right to dower she may have in said land.

"Given under my hand," &c.

The vice-chancellor decreed in favor of the complainant, Heidelberg, and annulled and revoked the deed of Toulmin, from which decree the latter prosecutes this appeal. The other proceedings are sufficiently set out in the opinion of the court.

*T. J.* and *F. A. R. Wharton*, for appellant.

Unless Heidelberg establishes the fact that he was the " rightful

owner" of the lands in controversy, manifestly the decree directing Toulmin's deed to be cancelled, and declaring it to be a cloud upon Heidelberg's title, was erroneous. He could not sustain his bill except upon proof that he was such "rightful owner." Hutch. Code, 773, art. 16, sec. 1, Act of 1841. If he failed to establish such ownership, surely he had no right to a decree requiring the cancellation of a deed which did not, and could not by possibility, operate as a "cloud" upon his title, or rather, prejudice his rights. We do not consider it necessary to refer to other authorities in support of this position.

The question then arises; did Heidelberg establish by his proofs that he was the "rightful owner" of the lands? We insist he wholly failed to do this. His only pretence of title was under the conveyance, or rather pretended conveyance, from Jane Lee Johnston and W. P. Cherry, as attorney in fact for John Johnston. Without now assailing this conveyance, either on the ground that there was no valid consideration for its execution, or for want of title in Mrs. Johnston, we submit that he acquired no title under this deed, for the reason that Mrs. Johnston, if she was ever the owner of the lands, could not, under the Act of 1846, amendatory of the Married Woman's Law of 1839, "sell and convey her real estate," except "by deed of conveyance *executed jointly with her husband.*" Hutch. Code, 498, art. 7, sec. 6.

We insist there must be a compliance with this requisition of the Act by the husband, in his own proper person; that he cannot, by power of attorney, authorize another to use his name in connection with his wife, so as to enable her to divest herself of the title to real estate.

But if incorrect in this latter position, we then insist that this can only be done by a power of attorney specially authorizing such a conveyance. But, in any point of view in which the power of attorney from Johnston to Cherry can be considered, it is insufficient to have enabled Mrs. Johnston and Cherry to divest the title of Mrs. Johnston, if she had any, and invest it in Heidelberg. This was but a general power of attorney, authorizing Cherry to sell and convey, for such price as he might think proper, all of Johnston's lands in Mississippi. Now if the deed

from Johnston to Neill was valid, certainly the lands did not, at the date of the execution of the power of attorney, belong to Johnston—the latter being dated *November the* 10*th*, 1847, whilst the deed from Johnston to Neill was dated on the 24*th October*, 1839, and consequently Cherry had no authority to execute the deed jointly with Mrs. Johnston.

If the deed from Johnston to Neill was invalid, then Mrs. Johnston acquired no title under the deed from Neill; and, as a necessary consequence, Heidelberg acquired no title under the conveyance by her and Cherry to him. He claims title as purchaser from Mrs. Johnston, whilst Toulmin claims title as a *bona fide* purchaser from Johnston, under a previous sale, who was, certainly, the owner of the lands if the conveyance by him to Neill was invalid. So that, in no point of view, did Heidelberg show himself to be the "rightful owner" of the lands.

But again, the conveyance from Mrs. Johnston and Cherry was not acknowledged by Cherry. This, under the Act of 1846, before cited, would invalidate the conveyance, if good in other respects.

Again, Heidelberg's claim of title under possession cannot avail anything. He did not rely upon this in his bill of complaint. It appears in the record, for the first time, in his answer to Toulmin's cross-bill, and was not then called out by that. The cross-bill only called on him to answer whether or not, at the time of the conveyance to him from Mrs. Johnston and Cherry, he was informed that Toulmin was a *bona fide* purchaser for a valuable consideration, and had received a deed from John Johnston. Whatever the proofs may establish as to his possession, still he is not entitled to the benefit of them, because the question of title by possession was not a legitimate issue in the cause, it not being responsive to any matter called out by Toulmin's cross-bill.

Unless the conveyance to him by Mrs. Johnston and Cherry was valid—and we submit that we have shown it was not—he, Heidelberg, could not support his claim to title under possession by proof of possession as agent of Mrs. Johnston previous to the conveyance by her and Cherry to him. Necessarily he would be restricted to his possession since the date of that conveyance; his previous pos-

session was, in law, but the possession of Mrs. Johnston. Then, if he can avail himself of any proof as to title by possession, he must be restricted to the time of his possession after such convey- ance, and to the filing of his bill—which would be from the 1st of October, 1851, to the 9th of January, 1852. The record showing the former as the date of the conveyance to him, and the latter as the date of filing of his bill.

*George L. Potter*, for appellee,

After commenting on the evidence and contending that it showed that the appellant had no title, argued as follows:—

On what grounds, then, can Toulmin prosecute this appeal? His deed was originally void; it is annulled by paramount title; it is barred by limitation. Under no circumstances can he re- cover; and it is wholly immaterial to him whether the decree be erroneous or not. He has no ground for controversy, and might, with equal propriety, appeal in a suit between strangers. It is a settled rule that a party, not prejudiced by a decree, shall not be heard on appeal, for he has no substantial cause of complaint. *Reid* v. *Vanderheyden*, 5 Cow. 719; 11 Wend. 227; 2 Paige, 478. If he insists that he may show error to avoid the half of the costs with which he is taxed, we reply that costs are *discretionary*, and not matter for appeal. He cannot appeal merely to avoid the costs, but must show *error to his prejudice*, in some other matter. *Ashley* v. *Riger*, 3 Rand. 165; 1 Hill, Ch. 76, 92.

Toulmin having no rights in the land, has suffered no prejudice by the decree, right or wrong, and therefore cannot be heard on appeal. To what purpose will he attempt to assail the decree, or the title of Heidelberg?

It is true the certificate on the deed to Heidelberg is not as full as it might be; but it has all substantial requisites. It shows the private examination of Mrs. Johnston, apart from her husband, and that she executed the deed voluntarily, which means that she executed it of her own free will, and necessarily excludes the idea of any fear, threat or compulsion. Where an act is done *voluntarily*, there can be no pretence of duress; and cumulative asser-

tions sufficient to fill a quarto, could not more clearly show an exercise of her free will than that one word.

If the requirements of the statute are "substantially complied with," it is sufficient. *Love* v. *Taylor,* 4 Cush. 575.

In *Slavins* v. *Fisher,* the wife acknowledged she signed and sealed "uninfluenced in any way whatever," and the only objections taken by the court were that the certificate did not show a separate examination, nor a *delivery* of the deed. The words quoted seem to have been considered sufficient. 4 Cush. 353.

The Pennsylvania Act required the wife should acknowledge she executed "without coercion or compulsion," &c., and the court said, "if the execution was *voluntary,* it was without coercion or compulsion." It was held that a certificate showing she consented "voluntarily," was therefore sufficient. . *Shaller* v. *Brand,* 6 Binn. 438. So where. the statute word was "voluntary," it was held that a certificate showing the wife "freely executed the deed without any fear, threats or compulsion of her husband," was a substantial compliance with the law. *Battin* v. *Bigelow,* 1 Pet. C. C. Rep. 453.

. The Indiana statute used the words "voluntarily and of her own free will and accord," &c., "without any coercion or compulsion from her husband." The certificate showed the wife acknowledged the instrument as her "*voluntary* act and deed," and it was held good. *Stevens* v. *Doe,* 6 Blackf. 476.

If it be further objected that the certificate speaks of a release of dower, we say it also shows she executed the deed "for the purposes therein mentioned," and the deed recites that the land was her separate property. She had *no* claim of dower, and must have known she was selling the land itself.

FISHER, J., delivered the opinion of the court.

This is a writ of error to the decree of the Vice-Chancery Court holden at Paulding.

The object of the bill was to vacate a quit claim deed, held by the defendant to the land in controversy, the bill alleging that the complainant has a perfect title to the land; and that the defendant's deed operates as a cloud upon the same. The rule is now too well

settled to require comment, that to authorize a court of equity to give relief in a case like the present, the complainant must, by his pleadings, show either a legal or complete equitable title; and that failing in this respect, no relief can be granted. Our first inquiry must be, whether the complainant has brought himself within the operation of this rule; and it is not necessary that we should go beyond the allegations of the bill, and the exhibits which accompany it, to solve this question. It is alleged that one Garvin, who derived his title under the treaty of the United States with the Choctaw tribe of Indians, conveyed the land to one John Johnston, Senr., that he conveyed to one Neill, who conveyed to Mrs. Jane Lee Johnston, wife of the said John Johnston. That John Johnston conveyed by quit claim deed to the defendant, which is the deed sought to be cancelled. That afterwards, in October, 1851, Mrs. Jane Lee Johnston, together with one Wm. C. Cherry, acting as the attorney in fact of the said John Johnston, conveyed to the complainant. The question is, whether the complainant has acquired Mrs. Johnston's title by virtue of this deed. The power of attorney from John Johnston, Senr., to Cherry, is made an exhibit to the bill, and it authorizes him to convey the lands of the said John Johnston, situate in this State, but is entirely silent as to the lands of the wife. A power executed by a husband, authorizing a conveyance of his own lands, by an agent or attorney, is no authority to authorize such attorney to convey the lands of the wife. Besides, the power only authorized a conveyance of such lands as the husband then owned; and having previously conveyed to the defendant, it conferred no authority on the attorney to convey the land in question. Mrs. Johnston's deed must therefore be treated in all respects, supposing it to have been properly executed, as her sole deed, without her husband's being a party thereto, and it is therefore simply a nullity.

But aside from this objection, the deed is not acknowledged according to the requirements of the statute. It does not appear that it was signed, sealed, and delivered by the wife, without the fear, threats or compulsion of her husband. The acknowledgment by the wife is not merely form. It is part of the real substance of the deed—which is not complete without the acknowledgment.

VOL. III.—18

We have not thought it necessary to examine the testimony filed in the cause, as it could only establish the truth of what is alleged in the bill; and if the complainant cannot recover upon his pleadings and exhibits, admitting them to be true, of course he cannot recover upon his testimony. He cannot make by his proof a stronger case than he has made by his pleadings—assuming the latter to be true. His testimony could only establish the truth of the allegations of the bill; and if they are not sufficient to authorize a decree, when established, the controversy is of course at an end.

Decree reversed and bill dismissed.